Not Reported in A.2d
33 Conn. L. Rptr. 245
**(Cite as: 2002 WL 31304131 (Conn.Super.))**

Page 1

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut.

Susan NEIMAN,
v.
YALE UNIVERSITY.

**No. X04CV970120725S.**

Sept. 17, 2002.

McLACHLAN, J.

Facts

*1 The plaintiff, Susan Neiman ("Neiman"),
commenced this action against Yale University
("Yale"), for damages allegedly sustained as the
result of the defendant's failure to offer her a
tenured appointment in its Department of
Philosophy. Plaintiff's three-count amended
complaint dated February 11, 2000 alleges breach
of contract, breach of the implied covenant of good
faith and fair dealing contained in the contract and
negligent misrepresentation.

Yale's motion to dismiss deals with the question of
whether the exhaustion of remedies doctrine applies
in an employment situation where there is neither a
statute nor a collective bargaining agreement
requiring or providing a grievance procedure. There
are no appellate cases in Connecticut deciding this
issue.

The following facts are either undisputed or
uncontradicted. Ms. Neiman was offered a position
as an assistant professor at Yale in the spring of
1988. At or about that time, she received a copy of
the 1986 edition of Yale's faculty handbook. Her
initial appointment commenced January 1, 1989 and
ended June 30, 1992.

Sometime in 1990, Yale placed its Department of
Philosophy into an academic "receivership," which
involved, *inter alia*, increased external supervision
of the employment decisions in that department. In

1992, the plaintiff was offered and accepted the
renewal of her appointment for an additional
three-year term. Sometime in 1993, Robert Adams
assumed the position as Chair of the department.
That same year, Neiman was promoted to the
position of associate professor without tenure. Yale
issued a new faculty handbook in 1993, which
superseded the 1986 Handbook. [FN1]

> FN1. The provisions of the 1986 and 1993
> faculty handbooks are substantially the
> same with respect to the sections at issue in
> this case. Any differences are not material
> to the court's analysis or conclusion.

In 1995, Neiman requested Yale to consider her for
a tenured position in the Department of Philosophy.
A faculty search was conducted, several meetings
were held and strong positions were taken by
various individuals participating in the process. On
January 22, 1996, Provost Alison Richard informed
the plaintiff that the Advisory Committee voted by a
narrow margin not to recommend her for tenure.
Although Neiman still had two years of untenured
employment remaining at Yale, she accepted
employment elsewhere and left before her term
expired in June of 1998. The plaintiff did not
challenge the 1996 tenure decision through the
grievance procedure contained in the 1993 faculty
handbook.

By motion dated January 24, 2001, Yale moves to
dismiss all three counts of the amended complaint
claiming this court lacks subject matter jurisdiction
due to Neiman's failure to exhaust the **remedies**
provided for in her employment contract prior to
commencing suit.

Discussion

"Jurisdiction of the subject-matter is the power [of
the court] to hear and determine cases of the general
class to which the proceedings in question belong
..." (Internal quotation marks omitted.) *Doe v. Roe*,
246 Conn. 652, 661, 717 A.2d 706 (1998). "In
ruling upon whether a complaint survives a motion
to dismiss a court must take the facts to be those
alleged in the complaint, including those facts
necessarily implied from the allegations, construing
them in a manner most favorable to the pleader."

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
33 Conn. L. Rptr. 245
**(Cite as: 2002 WL 31304131 (Conn.Super.))**

*Pamela B. v. Ment,* 244 Conn. 296, 308, 709 A.2d 1089 (1998). "The motion to dismiss ... admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone ... Where, however ... the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citations omitted; internal quotation marks omitted.) *Barde v. Board of Trustees,* 207 Conn. 59, 62, 539 A.2d 1000 (1988).

**\*2** It is well settled that the exhaustion doctrine implicates subject matter jurisdiction. *Hunt v. Prior,* 236 Conn. 421, 431, 673 A.2d 514 (1996); *Labbe v. Pension Commission,* 229 Conn. 801, 811, 643 A.2d 1268 (1994); *Pet v. Dept. of Health Services,* 207 Conn. 346, 350-51, 542 A.2d 672 (1988). If grievance and arbitration procedures are set forth in a collective bargaining agreement, an employee must at least attempt to exhaust them before resorting to the court system. *School Administrators Association v. Dow,* 200 Conn. 376, 383, 511 A.2d 1012 (1986). Likewise, if a statutory procedure exists to challenge an administrative decision, a party may not bypass such procedures by bringing an independent action in court. *LaCroix v. Board of Education,* 199 Conn. 70, 78, 505 A.2d 1233 (1986)

In this case, there is no collective bargaining agreement or statutory procedure in place specifying the steps to be taken by an employee to challenge the denial of a tenure but rather a handbook with grievance process provisions. The issue, therefore, is whether the plaintiff's failure to **exhaust** the contractual **remedies** contained in the defendant's handbook deprives this court of subject matter jurisdiction. No Connecticut appellate court has decided this precise issue.

The 1993 faculty handbook (the "Handbook") is the operative handbook. [FN2] The plaintiff's breach of contract claim and breach of the implied covenant of good faith and fair dealing claim are both based upon the alleged failure of Yale to follow the procedures relating to tenure as contained in the Handbook. Reliance upon the Handbook provisions is critical to Neiman's theory of the case; she alleges the Handbook defines the

terms and conditions of her employment and is *the contract* between the parties. "A faculty manual that sets forth terms of employment may be considered a binding employment contract." *Craine v. Trinity College,* 259 Conn. 625, 655, 791 A.2d 518 (2002); *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 479 A.2d 781 (1984).

> FN2. The decision to decline to offer the plaintiff a tenured appointment was made on January 22, 1996. The 1993 faculty handbook was then in place and had not been superceded by any subsequent handbook.

Section III of the Handbook, entitled "FACULTY APPOINTMENTS: ALL SCHOOLS," contains subsection L, entitled "Decisions to Reappoint or Promote and Their Review." Subsection 3 of subsection L contains the procedures available to a faculty member who "believes he or she has been treated in an unfair or discriminatory manner in connection with a decision about reappointment or promotion ..." The critical paragraph in the Handbook is Section IIIL3a:

a. Purpose. The procedures described in this section are available to any faculty member who believes that he or she has been treated in a manner inconsistent with University policies on reappointment or promotion. In a case where a faculty member believes that a University policy has not been properly observed in the case of his or her reappointment or promotion, that his or her reappointment or promotion has not been adequately considered, or that he or she has been discriminated against in matters of reappointment or promotion on the basis of race, color, religion, age, sex, sexual orientation, handicap or national or ethnic origin, the faculty member *may* request review of his or her complaint in accordance with the procedures specified below. It is not the purpose of these review procedures to consider substantive issues of professional competence. (Emphasis added.)

**\*3** Neiman did not follow the procedures in the Handbook to challenge the denial of a tenured appointment *after* the decision was made on January 22, 1996. Yale claims that her failure to seek a reversal of that decision through the Handbook's internal grievance process deprives this

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
33 Conn. L. Rptr. 245
(Cite as: 2002 WL 31304131 (Conn.Super.))

court of subject matter jurisdiction. Neiman argues she was not required to **exhaust** the Handbook's **remedies** before seeking redress in this court because: 1) the Handbook's remedy was not an exclusive remedy; 2) the complaint procedure did not apply to this tenure decision because the Department of Philosophy had been placed into an academic "receivership" and the rules had been suspended; and 3) the Provost and the President of Yale University were aware of the plaintiff's complaints of unfairness and, therefore, it would have been futile to pursue the contractual remedies.

In determining whether the exhaustion doctrine should apply to an employment dispute in the absence of a collective bargaining agreement or statutory provisions establishing mandatory procedures, the court will explore the rationale behind the exhaustion of remedies requirement.

"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions ... The doctrine ..., furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency ... in advance of possible judicial review ... Most important, a favorable outcome will render review by the court unnecessary [because] as the United States Supreme Court has noted: A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. *McKart v. United States,* [ *supra,* 395 U.S. at 195] ..." (Citations omitted; internal quotation marks omitted.) *Pet v. Dept. of Health Services,* 207 Conn. 346, 351-52, 542 A.2d 672 (1988). Thus, "[t]he two part rationale for the exhaustion doctrine is: (1) to effectuate the legislative intent that the issue in question be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment ... and (2) to relieve courts of the burden of prematurely deciding questions that may be resolved satisfactorily through the administrative process." (Citation omitted; internal quotation marks omitted.) *Loulis v. Parrott,* 241 Conn. 180, 191, 695 A.2d 1040 (1997); see also *Connecticut*

*Bank & Trust Co. v. Commission on Human Rights & Opportunities,* 202 Conn. 150, 155, 520 A.2d 186 (1987) (doctrine of exhaustion of administrative remedies is "designed to prevent piecemeal appeals of a litigant's claims before an administrative agency" [internal quotation marks omitted] ). Moreover, "judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise discretion or apply its expertise ... [N]otions of administrative autonomy require that the agency be given a chance to discover and correct its own errors ... [I]t is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." (Internal quotation marks omitted.) *Cannata v. Dept. of Environmental Protection,* 215 Conn. 616, 625, 577 A.2d 1017 (1990).

*4 *Johnson v. Statewide Grievance Committee,* 248 Conn. 87, 95-96, 726 A.2d 1154 (1999).

There is no reason why this rationale does not apply to a university setting involving an internal grievance procedure set forth in an employment contract. In this case, Neiman claims she was treated unfairly in the consideration of her application for a tenured appointment at Yale. She claims the defendant did not follow the procedures set forth in her contract, i.e., the Handbook. She references the sections in the Handbook that allegedly were disregarded by the defendant, which Neiman alleges is her contract with Yale. Yet that same Handbook contains Section IIIL3, the procedure for challenging the fairness of decisions relating to promotion. [FN3]

> FN3. The plaintiff claims she read all the provisions relating to promotion, tenure and academic freedom but did not review the section on grievance procedures prior to April 1, 1996. (Affidavit of Susan Neiman dated August 17, 2001.) It should be noted, however, that paragraph 155 in count one of her original complaint dated April 18, 1997 quotes from the very section she claims she did not read and references that section as support for her claim that Yale treated her unfairly.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
33 Conn. L. Rptr. 245
(Cite as: 2002 WL 31304131 (Conn.Super.))

Page 4

It would have been helpful to the court to have the individuals and committees most familiar with the procedures for tenure appointments to make determinations as to the compliance or non-compliance with those provisions. Even if the decision was ultimately unfavorable to Neiman, the court would have had the benefit of a factual record, including their findings and conclusions. If, in fact, Neiman successfully challenged the tenure decision through Yale's internal grievance procedure, the matter would have been resolved without this lawsuit. For these reasons, the court concludes the exhaustion doctrine applies under the circumstances of this case. [FN4]

FN4. Other Connecticut superior court decisions have also favored the application of the exhaustion doctrine to situations other than those involving collective bargaining agreements. In *Dinegar v. University of New Haven,* No. 378256 (October 16, 1997), Judge Silbert granted summary judgment against the plaintiffs on their breach of contract claims for failure to exhaust the grievance procedures set forth in the university's faculty constitution. In *Stavena v. Sun International Hotels, Ltd.,* No. 116974 (June 30, 2000) (Corradino, J.), *Bakkala v. Connecticut College,* No. 103578 (October 30, 1996) (Hurley, J.), and *Murphy v. Midwest Connecticut Council on Alcoholism,* No. 051423 (January 10, 1992) (Pickett, J.) (5 Conn. L. Rptr. 436), the courts recognized the application in non-collective bargaining situations but declined to apply the doctrine under the particular circumstances of the cases before them.

A United States District Court case, applying Connecticut law and involving the very handbook at issue, supports this conclusion. In *Franco v. Yale University,* 161 F.Sup.2d 133 (D.Conn.2001), Judge Goettel ruled upon defendant's motion to dismiss in an action brought by a surgeon against Yale University, its medical school and other physicians for damages alleged to have resulted from, *inter alia,* their actions in causing a decrease in the referral of surgical cases to the plaintiff at the university hospital. The defendants moved to dismiss the breach of contract claim on the ground that plaintiff failed to utilize the internal grievance process set forth in the 1993 Yale University faculty handbook. In the *Franco* case, however, the plaintiff was not claiming a breach of the provisions of the handbook.

It has become a not uncommon practice in recent years for employees at will to claim the existence of an employment contract based on an employment handbook. *If plaintiff made such a claim, he would clearly be required to have followed the provisions of the handbook ... If the plaintiff subsequently at trial attempts to seek damages based on the failure to reappoint him or reductions in salary while he was employed, we hold that the failure to* **exhaust** *the internal remedies bars such claims.*
*Id.,* at 138 (emphasis added).

Courts in other jurisdictions have required the exhaustion of contractual remedies, in university and other employment settings, concluding that aggrieved employees had to resort to the grievance procedures set forth in their handbooks or other contract documents before they could seek redress in the court system. [FN5] Although these decisions are not binding precedent, they are helpful in the analysis of the exhaustion doctrine. The Massachusetts Supreme Court's decision in *O'Brien v. New England Telephone & Telegraph Co.,* 664 N.E.2d 843 (Mass.1996) is particularly persuasive in its reasoning.

FN5. *Brennan v. King,* 139 F.3d 258 (1st Cir.1998); *Long v. Samson,* 568 N.W.2d 602 (N.D.1997); *O'Brien v. New England Telephone & Telegraph Co.,* 664 N.E.2d 843 (Mass.1996); *Thompson v. Peterson,* 546 N.W.2d 856 (N.D.1996); *Muth v. Board of Regents of Southwest Missouri State University,* 887 S.W.2d 744 (Mo.App.S.D .1994); *Bockover v. Perko,* 28 Cal.App.4th 479 (1994); *Schnelting v. Coors Distributing Co.,* 729 S.W.2d 212 (Mo.App.1987); *Krynicky v. University of Pittsburgh,* 560 F.Sup. 803 (W.D.Pa.1983) ; and *Hyning v. University of Alaska,* 621 P.2d 1354 (Alaska 1981).

**\*5** A personnel manual may form the basis for an

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
33 Conn. L. Rptr. 245
(Cite as: 2002 WL 31304131 (Conn.Super.))

Page 5

express contract. (Citation omitted.) Surely, if the parties agree in advance of employment that a personnel manual will set forth relative rights and obligations of employer and employee, the manual becomes part of the employment contract. *Id.,* at 847.

The manual provides a grievance procedure involving "a complaint that an employee has, in any manner, been unfairly treated ." The stated procedure, which provides for four steps (if suspension or termination is involved), requires that "[g]rievances must be presented initially within thirty (30) calendar days of the occurrence which gave rise to the grievance." O'Brien did not follow the grievance procedure, and that omission, as a matter of law, is fatal to her claim that NET [the defendant employer] violated the terms of her employment. O'Brien knew of the grievance procedure (she had notice of it in any event) and had used it successfully. *She cannot assert a right against unfair treatment under one part of her employment contract and fail to follow procedures set forth in another part of that contract that could provide relief from that unfair treatment.* The grievance procedure was not optional in the sense that O'Brien could assert a violation of rights under the personnel manual without following the grievance procedure. It was an optional procedure only in that an employee with a grievance could decide not to pursue the grievance. *Id.,* at 849 (emphasis added).

Neiman's claims of breach of contract and breach of the implied covenant of good faith and fair dealing (her first and second counts) are both based upon the alleged failure of Yale to observe the terms and conditions relating to promotion set forth in the Handbook. That same Handbook contains a grievance process, which the plaintiff chose to ignore. She alleges she was treated unfairly in the processing of her application for a tenured appointment. The internal grievance procedure is to be used in those very instances in which a faculty member "believes he or she has been treated in an unfair or discriminatory manner in connection with a decision about reappointment or promotion ..." Section IIL3, Yale University Faculty Handbook (Jan.1993). Unless there is a legally cognizable exception excusing the plaintiff from utilizing the Handbook's internal grievance process, the plaintiff is barred from seeking redress in the court system

because this court is deprived of subject matter jurisdiction.

Neiman first claims that resort to the grievance process is optional, rather than mandatory, because the Handbook provides that a "faculty member *may* request review of his or her complaint in accordance with the procedures specified below." (Emphasis added.) Section IIIL3a, Yale University Faculty Handbook (Jan.1993). Neiman argues that, in order to be a mandatory process, the Handbook should have provided that a faculty member *must* or *shall* request review of a complaint, and that there should be language indicating that the internal grievance process is an exclusive remedy that must be utilized before a complainant may resort to the court system. The court disagrees with Neiman's position. The plaintiff has cited no case which requires a handbook or employment contract to set forth a detailed explanation of the penalties for failure to **exhaust** contractual **remedies**. Clearly the *Franco* case, *supra,* indicates otherwise. Judge Goettel construed the provisions of the same Handbook and concluded the process was mandatory. *Franco v. Yale University,* 161 F.Sup.2d 133, 138 (D.Conn.2001).

**\*6** Moreover, to use the word "must" or "shall" instead of "may" would require a faculty member to grieve a decision even if he or she is willing to accept an adverse decision which the member considered unfair. Clearly, as the language in the *O'Brien* case indicated, "[t]he grievance procedure was not optional in the sense that O'Brien could assert a violation of rights under the personnel manual without following the grievance procedure. It was an optional procedure *only* in that an employee with a grievance could decide not to pursue the grievance." *O'Brien v. New England Telephone & Telegraph Co.,* 664 N.E.2d 843, 849 (Mass.1996).

Neiman further claims that, because the Department of Philosophy had been placed into an academic "receivership," the internal grievance procedures were not in place. Nothing, however, has been provided to the court to indicate Yale in any way repudiated those provisions. Without any substantiation or documentation whatsoever to support this contention, the court declines to find it a basis to ignore these contractual **remedies**.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
33 Conn. L. Rptr. 245
(Cite as: 2002 WL 31304131 (Conn.Super.))

Page 6

Finally, Neiman claims it was unnecessary to **exhaust** the contractual **remedies** because the Provost and President of Yale University were aware of her complaints of unfairness and it would have been futile to challenge the denial of tenure decision through the grievance process. Even if the Provost and the President had knowledge that the plaintiff was seeking a tenured appointment and that she had expressed concerns about the fairness of the process, this does not excuse her from utilizing the grievance process once an adverse determination had been made on January 22, 1996. In the first place, how are they to know whether Neiman wishes to challenge the denial decision or would rather seek a position elsewhere? It is not the responsibility of Yale to question Neiman's intentions. It is her responsibility to indicate in a clear and unambiguous manner that she is challenging the subject decision.

The Handbook set out a detailed procedure to be followed once a complaint has been filed. The Provost and President must then adhere to the provisions of a very formal process. Simply being aware of an issue is not the same as contending with a complaint filed in accordance with specific provisions of the faculty handbook.

A remedy is not futile simply because the complainant believes the process to be pointless in the face of the earlier adverse decision. *LaCroix v. Board of Education,* 199 Conn. 70, 84-85, 505 A.2d 1233 (1986). "An administrative remedy is futile or inadequate if the agency is without authority to grant the relief requested." *Fish Unlimited v. Northeast Utilities Service Co.,* 254 Conn. 1, 14, 756 A.2d 262 (2000); *Cannata v. Dept. of Environmental Protection,* 215 Conn. 616, 625, 577 A.2d 1017 (1990). "It is futile to seek [an administrative] remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings." (Internal quotation marks omitted.) *Hunt v. Prior,* 236 Conn. 421, 433, 673 A.2d 514 (1996); *Simko v. Ervin,* 234 Conn. 498, 507, 661 A.2d 1018 (1995).

**\*7** In the present case, Neiman claims Yale did not follow the provisions in the Handbook when considering her application for a tenured appointment, thereby rendering the process unfair. If Neiman challenged the adverse decision through the internal grievance procedure, Yale had the

authority (and contractual duty) to reconsider her application. It is quite possible a new procedure, one satisfactory to plaintiff, could have been put in place as a result of her complaint *and* it is possible that the outcome would have been different. It is possible Neiman would have been granted a tenured appointment in the Department of Philosophy and resort to the court system would have been unnecessary. Certainly these outcomes are *possible,* and that is all that is required to defeat an argument that resort to the grievance procedure would have been futile.

The fact that Neiman could have obtained the relief she now seeks by utilizing the internal grievance procedures set forth in the Handbook, but chose not to do so, is fatal to her contractual claims. The contractual remedies' provisions are as much a part of the contract, i.e., the Handbook, as are the provisions relating to appointment and tenure. Neiman cannot rely on one portion of the contract and eschew the provisions in another portion of that same contract. By failing to **exhaust** her contractual **remedies,** she has deprived this court of subject matter jurisdiction over her contractual claims, i.e., counts one and two of the amended complaint dated February 11, 2000.

With respect to count three of the operative complaint, Neiman alleges more than the failure of Yale to follow the appointment and tenure procedures specified in the Handbook. There are claims that certain actions of Yale relating to her hiring, rehiring and promotion to associate professor constitute representations that her viewpoints regarding philosophy would not be used as a basis for the denial of a tenured appointment. She alleges, at paragraph 97, that she "continued writing and teaching in the same manner and she did not aggressively seek a position elsewhere in the United States or abroad" in reliance upon these representations. The third count is not a breach of contract claim; it is a claim of negligent misrepresentation.

Construing the factual allegations of the third count in the light most favorable to the plaintiff, as the court must do in considering a motion to dismiss, the court concludes that this tort claim was not required to be addressed through the Handbook's internal grievance procedure and that the exhaustion doctrine is, therefore, not applicable. The court has

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
33 Conn. L. Rptr. 245
**(Cite as: 2002 WL 31304131 (Conn.Super.))**

Page 7

jurisdiction over this claim and the motion to dismiss is denied with respect to the third count.

Conclusion

The plaintiff failed to **exhaust** the contractual **remedies** available to her in the Handbook. Having failed to do so, this court lacks subject matter jurisdiction over her contractual claims and grants the defendant's motion to dismiss counts one and two of the plaintiff's amended complaint.

**\*8** With respect to plaintiff's claim for negligent misrepresentation, the court denies the defendant's motion to dismiss count three of the plaintiff's amended complaint.

2002 WL 31304131 (Conn.Super.), 33 Conn. L. Rptr. 245

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works